IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA



CHARLES B. BRINKMAN and
LOUISE K. BRINKMAN,
                Plaintiffs,

v.

JOHN CRANE, INC. *et al*, including GENERAL
DYNAMICS CORPORATION
                Defendants.

Case No. 4:14CV142

### DEFENDANT GENERAL DYNAMICS CORPORATION'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441, 1442, and 1446 defendant GENERAL DYNAMICS CORPORATION ("General Dynamics") hereby files its Notice of Removal of the above-entitled civil action, now pending in the Virginia Circuit Court for the City of Newport News, bearing Docket No.: CL14-02757F-15 (TF) to the United States District Court for the Eastern District of Virginia:

In support, General Dynamics states:

### PROCEDURAL HISTORY

1. Plaintiffs initiated the instant action against General Dynamics in the Virginia Circuit Court for the City of Newport News, by service of Summons and Complaint dated March 6, 2012. A copy of plaintiff's Summons and First Amended Complaint is annexed hereto as **Exhibit "1."**

2. Plaintiffs Complaint alleges, *inter alia,* that Mr. Brinkman was exposed to asbestos while serving as a nuclear submariner in the United States Navy from 1962-1970. It is

513464v.1

alleged that his submarine assignments were the *USS Sea Leopard*, *USS John Marshall*, *USS Will Rogers*, *USS George Bancroft*. *See* Exhibit "1," ¶ 7.

3. General Dynamics is named as a "Shipyard Defendant" and it is alleged that "during all times material hereto, and for a long period of time thereto, has been, and/or is now engaged in the construction, repair and overhaul of Naval submarines, including, but not limited to the *USS Will Rogers* (SSBN-659)." *See* Exhibit "1" ¶ 10. Mr. Brinkman was allegedly stationed aboard the *USS Will Rogers* and was a member of its pre-commissioning crew from approximately July 1966 through April 1967 and thereafter. *See* Exhibit "1" ¶ 10. Mr. Brinkman was allegedly exposed to asbestos in the course of this segment of his U.S. Navy service. *See* Exhibit "1" ¶ 10.

4. Mr. Brinkman was allegedly injured by the alleged conduct of defendants. His alleged injuries include the development of mesothelioma. *See* Exhibit "1" ¶15. Mrs. Brinkman claims loss of consortium. *See* Exhibit "1," Count V.

### THE INSTANT NOTICE OF REMOVAL IS TIMELY FILED

5. It is statutory law that "a notice of removal shall be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based..." *See* 28 U.S.C. § 1446 (b)(1).

6. The Summons and Complaint in this action informed General Dynamics that the instant matter was removable. As General Dynamics was served with the Summons and Complaint on September 24, 2014, the instant Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) because it is being filed within thirty (30) days after receipt of the initial pleading.

## INTRA DISTRICT ASSIGNMENT

7. This Notice of Removal and all exhibits are being filed in the United States District Court for the district and division in which the state court action is pending. *See* 28 U.S.C. § 1446(a).

## BACKGROUND

8. This is an asbestos personal injury action by plaintiff against General Dynamics based upon plaintiff's alleged asbestos-related disease caused by alleged exposure to asbestos in connection with his U.S. Navy service. Specifically, plaintiff asserts allegations against General Dynamics pertaining to its former Electric Boat division.

9. At all relevant times, the former Electric Boat division of General Dynamics[1] was specifically engaged by the U.S. Navy to perform work in connection with nuclear submarines pursuant to a series of United States government contracts at its secure facility in Groton, Connecticut. Simply put, in its role as a government contractor, General Dynamics, through its former Electric Boat division, was in the business of assembling, overhauling, repairing, modernizing and maintaining military submarines on behalf of the U.S. Navy in accordance with its contractual duties and applicable military specifications in effect at the time. See Affidavit of John B. Padgett, III, annexed hereto as **Exhibit "2."**

10. General Dynamics assembled, overhauled, repaired, modernized and/or maintained submarines for the federal government under the direction, control and/or supervision of the United States Navy. Virtually every detail of this assembly, overhaul, repair,

---

[1] General Dynamics was sued along with Electric Boat Corporation in this action as a "shipyard defendants." The claims against these entities are interchangeable and relate to the activities at the Electric Boat shipyard in Groton, CT. During the time these claims arose, the shipyard was operated as the Electric Boat division of General Dynamics Corporation. In 1995, Electric Boat Corporation was incorporated and acquired all assets and assumed all liabilities of the Electric Boat division. General Dynamics Corporation states that in filing this notice, it expressly reserves and does not waive its right to move for summary judgment based on successor liability principles.

513464v.1

modernization and/or maintenance work was specified and overseen by the U.S. Navy, and required the approval of the United States Government at every stage of assembly. See Exhibit "2," at ¶¶ 10, 73.

11. The U.S. Navy selected the component parts and materials for these submarines; approved and specified their design, including the use of asbestos, if any; and required General Dynamics to use them in the course of its operations. In other words, General Dynamics had no choice with respect to the component parts and materials, including any asbestos-containing components therein, if any, used at its facility in connection with assembling, overhauling, repairing, modernizing and/or maintaining of U.S. Navy submarines, including but not limited to, the *USS Will Rogers*.

12. The claims against General Dynamics appear to be based upon allegations of its involvement with the *USS Will Rogers*, allegedly constructed at the Electric Boat shipyard in Groton, CT. Any involvement of General Dynamics pertaining to the *USS Will Rogers* during the time alleged in plaintiff's complaint would have been in connection with and pursuant to its contractual service to the U.S. Navy. Accordingly, General Dynamics seeks removal of this action to this Court on "federal officer" grounds pursuant to 28 U.S.C. § 1442(a)(1), as detailed below.

## FEDERAL OFFICER REMOVAL IS APPROPRIATE UNDER 28 U.S.C 1442(a)(1)

13. Removal is proper under 28 U.S.C. § 1442(a)(1) when the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, sued in an official capacity for any act under color of such office. *See* 28 U.S.C. §1442(a)(1).

513464v.1

14. This statute overcomes the well-pleaded complaint rule by providing a method to remove a case brought in state court against a federal officer, or any other person acting under a federal officer, despite the absence of a federal cause of action. *See Nesbiet v. General Elec. Co.*, 399 F. Supp.2d 205, 209 (S.D.N.Y. 2005); *Jefferson County v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.E.2d 408 (1999). The Supreme Court has noted that one of the purposes of the federal officer removal statute is to ensure that a federal court will adjudicate the validity of a defendant's official immunity defenses. *See Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981).

15. The federal officer statute, specifically 28 U.S.C. § 1442(a)(1), has been interpreted to allow removal of cases where private entities are the named defendants. In such cases, federal jurisdiction exists if the defendants seeking removal shows: (1) that they are persons within the meaning of the statute, who acted under a federal officer; (2) that they performed the acts for which they are sued under color of federal office; and, (3) that they raise a colorable federal defense. *See Isaacson v. Dow Chemical Co.*, 517 F.3d 129 (2d Cir. 2008); *Machnik v. Buffalo Pumps Inc.*, 506 F.Supp. 2d 99 (D. Conn. 2007), (reconsideration denied, 2007 WL 4570566); *McMahon v. Presidential Airways, Inc.*, 410 F.Supp. 2d 1189 (M.D. Fla. 2006); *Nesbiet v. General Electric Co.*, 399 F.Supp. 2d 205 (S.D.N.Y. 2005); *Madden v. Able Supply Co.*, 205 F.Supp. 2d 695 (S.D. Tex. 2002); *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D. Cal. 1992).

16. The federal officer removal statute is to be broadly interpreted and liberally construed. *See Willingham v. Morgan*, U.S.Kan.1969, 89 S.Ct. 1813, 395 U.S. 402, 23 L.Ed.2d 396, *on remand* 424 F.2d 200; *see also Williams v. Brantley*, W.D.N.Y.1980, 492 F.Supp. 925,

*aff'd* 738 F.2d 419; *Davenport v. Borders*, D.C.Ga.1979, 480 F.Supp. 903; *Dixon v. Georgia Indigent Legal Services, Inc.*, D.C.Ga.1975, 388 F.Supp. 1156, *aff'd* 532 F.2d 1373.

17. A corporation is a "person" within the meaning of section 1442(a). *Alsup v. 3-Day Blinds, Inc.,* 435 F.Supp. 2d 838 (S.D. Ill. 2006); *see Isaacson v. Dow Chemical Co.,* 517 F.3d 129 (2d Cir. 2008). As such, General Dynamics is a "person" within the meaning of 28 U.S.C. § 1442.

18. An entity acts under a federal officer when it assists, or helps carry out, the duties or tasks of the federal superior. In other words, a special relationship must exist, such as where a party contracts with the Government to "provide a product that the Government was using during war – a product that in the absence of Defendants, the Government would have to produce itself." *See Isaacson v. Dow Chemical Co.,* 517 F.3d 129. Close supervision of the private entity by the Government would constitute such a special relationship. *See Isaacson v. Dow Chemical Co.*, 517 F.3d 129.

19. General Dynamics' function during the period of alleged exposure was service as a government contractor in the assembly, overhaul, repair, modernization and/or maintenance of military submarines on behalf of the U.S. Navy in accordance with its contract(s) and applicable military specifications in effect at the time of the respective submarine's assembly. General Dynamics assembled, overhauled, repaired, modernized and/or maintained submarines, including the *USS Will Rogers*, pursuant to military procurement contracts with the Government and, in compliance with military specifications, as well as detailed design drawings, which were reviewed and approved by the United States Navy. *See* Exhibit "2," at ¶¶ 10, 16.

20. The Government was intimately involved in all phases of assembly of these military submarines. *Id.* The Government monitored General Dynamics' performance under its

contract(s) at all times and required General Dynamics to perform assembly, overhaul, repair, modernization and/or maintenance in accordance with the applicable and approved products, specifications and drawings incorporated into the contracts. *See* Exhibit "2," at ¶¶ 10-16.

21. The Government's intimate involvement with General Dynamics' work on Navy submarines included a significant Navy presence at General Dynamics' former Electric Boat division shipyard in Groton, CT, just as it had at other U.S. government and private shipyards where submarines were assembled, maintained and modernized. General Dynamics was required to abide by Navy instructions in the performance of its service on behalf of the U.S. government. *See* Exhibit "2" at ¶ 10.

22. In General Dynamics' service in the assembly, maintenance, overhaul and/or repair of military submarines on behalf of the U.S. Navy, General Dynamics, like U.S. Navy military shipyards performing the same services, would have functioned under the oversight and supervision of the U.S. Naval Supervisor of Shipbuilding, Conversion and Repair ("SUPSHIPS"). Ensuring the combat readiness of the U.S. Naval submarine fleet, General Dynamics would have been required to work hand in hand with the U.S. Navy. *See* Exhibit "2" at ¶ 11.

23. At all relevant times, the U.S. Navy would have had a presence daily at General Dynamics' former Groton, CT facility at issue in this matter, including personnel, engineering staff, quality review staff, propulsion energy staff, human resources, safety and/or government material storage. Additionally, at all relevant times, the U.S. Navy maintained offices, buildings, barges, sleeping quarters, training centers, and/or classified facilities within the secure shipyard perimeter. Moreover, the U.S. Navy's Bureau of Medicine ("BUMED"), located at the New London Submarine Base less than two miles away, would have had cognizant responsibility for

BUMED oversight at the Groton, CT facility pertaining to the health and safety for U.S. Navy servicepersons. *See* Exhibit "2" at ¶¶ 12, 13.

24. Throughout the time of Mr. Brinkman's service, strict compliance with safety standards established by the Navy and the U.S. Government was the responsibility of the officers serving on U.S. Navy ships whether in public or private shipyards. General Dynamics had no authority to direct the activities of Mr. Brinkman, or any other servicemen during the time period alleged in plaintiffs' complaint. *See* Exhibit "2" at ¶¶ 33, 71.

25. All submarines assembled by the former Electric Boat division of General Dynamics were subject to inspection, testing and approval by the United States Government. *See* Exhibit "2" at ¶ 52. In addition, the Government performed extensive testing of the submarines and their components and systems to ensure complete conformity with the design specifications. If any materials, equipment or parts used by the former Electric Boat division of General Dynamics in the performance of its government contracts were asbestos-containing, such materials, equipments or parts were used pursuant to and mandated by specific requirements of the U.S. Navy. *See* Exhibit "2" at ¶¶ 18, 55.

26. Furthermore, the United States Government required General Dynamics to assemble, overhaul, repair, modernize and/or maintain each system and component part of the submarine – as the Government's needs required – including any alleged asbestos-containing components and material, if any. *See* Exhibit "2" at ¶¶ 69, 70.

27. General Dynamics is entitled to federal officer removal under 28 U.S.C. 1442(a)(1) based upon the federal defense of derivative sovereign immunity as set forth in *Yearsley v. WA Ross Construction Co.,* 309 U.S. 18 (1940), and *Feres v. United States,* 340 U.S. 135, 137 (1950).

28. *Yearsley* established that a government contractor, performing at the direction and authorization of a government officer, is immune from suit based upon performance of the contract. The *Yearsley* doctrine is satisfied here because the acts complained of were performed at the direction of government officers, namely the United States Navy, acting pursuant to government authorization, and if the government had performed these acts directly, it would be immune from suit.

29. In *Feres*, the Supreme Court established the rule that a soldier may not sue the government for service related injuries. The Supreme Court extended *Feres* immunity to military contractors in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673 (1977), holding, *inter alia*, that the relationship of the government to its contractors was "no less 'distinctively federal in character'" than the government's relationship to its soldiers. *Id.* at 671. General Dynamics is entitled to derivative sovereign immunity under *Feres* because it was operating under the Navy's direct supervision and control with respect to the assembly, overhaul, repair, modernizations and maintenance of submarines at all relevant times. Moreover, the Navy required General Dynamics to implement the Navy's military judgments in designing, building, maintaining and modernizing its submarine fleet, and these military judgments are immune from judicial scrutiny.

30. Separate and additionally, General Dynamics is entitled to federal officer removal under 28 U.S.C. 1442(a)(1) based upon its colorable federal defense under the "combatant activities exception" of the Federal Tort Claims Act, which bars suit against the federal government for claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(a). The principles underlying the combatant activities exception have been extended to preempt claims against government

contractors. *See, e.g. Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009), *Koohi v. United States*, 976 F.2d 1328, 1336 (9th Cir. 1992).

31.     Plaintiff's claims against General Dynamics are preempted by the combatant activities exception because, (1) the activities giving rise to the claim arose during "time of war" and, (2) General Dynamics' actions during the period were combatant activities within the meaning of the statute. Mr. Brinkman's military service spanned 1962 through 1970. His alleged service aboard and in connection with the *USS Will Rogers* occurred during 1966 and 1967. See Exhibit "1," ¶ 7. The United States was engaged in the Vietnam War during the entire period of Mr. Brinkman's service, including his service in connection with the *USS Will Rogers*; thus, the claim arose during "time of war." Moreover, General Dynamics' actions at all relevant times with respect to the assembly, overhaul, repair, modernizations and maintenance of the submarine fleet were under the direction of the Navy and for the purpose of supporting the Navy's wartime and/or active conflict activities. Accordingly, General Dynamics' activities were "combatant activities." *See e.g., Johnson v. United States*, 170 F.2d 767, 769 (9th Cir. 1948) (Aiding others to swing the sword of battle is certainly a 'combatant activity'....).

32.     Further separately and additionally, General Dynamics is entitled to federal officer removal by the assertion of a colorable federal defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). This defense is satisfied here because the design specifications for these military submarines were government-approved, the military submarines conformed to these specifications, and to the extent that asbestos was known at the time to be a hazardous material, the Government's knowledge of such hazards was superior to the knowledge of General Dynamics.

513464v.1

33. As federal officers directed and required General Dynamics to install those parts, components, and materials on the military submarines, there is an unequivocal "causal nexus" between the direction General Dynamics received from the military, which it followed, and plaintiff's alleged injury. When a government contractor builds a product pursuant to military specifications and is later sued because compliance with those specifications allegedly causes personal injuries, the nexus requirement is satisfied. See *Isaacson v. Dow Chemical Co.; see also Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal 1992). Quite simply, the Navy "received exactly what it sought." See *Lewis v. Babcock Indus., Inc.*, 985, F.2d 83, 89 (2d Cir. 1993).

34. In fact, General Dynamics has been held to be a government contractor entitled to this defense. *Boston v. Eastern Refractories Co., Inc., et al.*, 2:07-CV-63993-ER (E.D. Pa. MDL 875) (Order Granting General Dynamics Corporation's Motion for Summary Judgment, entered August 30, 2010). A copy of the Court's Order Granting General Dynamics Corporation's Motion for Summary is annexed hereto as **Exhibit "3."**

35. General Dynamics has successfully removed cases to district courts all over the country, including those transferred directly to the Multi-District Litigation ("MDL") 875, before Hon. Eduardo Robreno in the Eastern District of Pennsylvania, based on the assertion of its government contractor defenses in connection with its former Groton, CT shipyard activities. *See e.g., Coats v. Duncan Enterprises, et al.*, EDPA (MDL) 2:12-cv-60186; *Prentice v. Air & Liquid Systems, et al.*, EDPA (MDL), 2:12:cv-60159; *Cummiskey v. General Electric Company, et al.*, EDPA (MDL) 2:12-cv-60131; *Roache v. Electric Boat Corporation*, EDPA (MDL) 2:10-cv-78922; *Kelly v. General Electric Company, et al.*, EDPA (MDL) 2:12-cv-60021; *Goodall v.*

513464v.1

*Electric Boat Corporation*, USDC CT 3:13-cv-0366; *Dryfka v. Trane US Inc. et al.*, SDIL 3:13-cv-01019.

36. A properly removed case cannot be remanded for discretionary or policy reasons, such as allegedly related State court cases or a contention that judicial economy compels remand. 28 U.S.C. § 1447(c); *Thermitron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976). The federal officer removal statute is not narrow or limited, and it should not be frustrated by a narrow or grudging interpretation of § 1442(a)(1). *Willingham v. Morgan*, 395 U.S. 402, 405 (1960).

37. General Dynamics is not required to notify and obtain the consent of any other defendant in this action in order to remove plaintiff's action as a whole under § 1442(a)(1). *See Alsup v. 3-Day Blinds, Inc.*, 435 F.Supp.2d at 842-843.

38. Should plaintiffs move to remand this case, General Dynamics respectfully requests an opportunity to respond more fully in writing, including the submission of additional affidavits and authority.

39. General Dynamics reserves all of its defenses.

40. As required by 28 U.S.C. § 1446(b), true and correct copies of the process and pleadings served upon General Dynamics are being filed with this Notice of Removal.

41. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal are being served on all parties and filed with the Virginia Circuit Court for the City of Newport News.

## CONCLUSION

42.     Removal of this action is proper under 28 U.S.C. § 1442, as it is a civil action brought in state court, and the federal district courts have original jurisdiction over the subject matter under 28 U.S.C. § 1442 (a)(1) because General Dynamics was acting under an officer or agency of the United States.

**WHEREFORE**, the defendant General Dynamics Corporation prays that this action proceeds in this Court as an action properly removed thereto.

Dated: October 16, 2014                                Respectfully submitted,

**GENERAL DYNAMICS CORPORATION**
By Counsel,

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**

By: /s/ Peter M. Moore
Jason R. Waters (VSB No. 73887)
Peter M. Moore (VSB No. 82444)
8444 Westpark Drive – Suite 510
McLean, VA 22102-5102
(703) 245-9300 (telephone)
(703) 245-9301 (facsimile)
Jason.Waters@wilsonelser.com
Peter.Moore@wilsonelser.com
*Counsel for Defendant General Dynamics Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served on all counsel of record via U.S. Mail this 16th day of October 2014 to:

Hugh B. McCormick, III
PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
(757) 223-4500
*Counsel for Plaintiffs*

Henry Ware, Esq.
411 East Franklin Street
Suite 600
Richmond, Virginia, 23219
(804) 697-2090
(804) 697-2190 (Fax)
*Counsel for Ingersoll-Rand Co.*

Timothy S. Brunick, Esq.
CLARKE, DOLPH, RAPAPORT, HULL & BRUNICK PLC.
Smithfield Building
6160 Kempsville Circle
Suite 101 A
Norfolk, Virginia 23502
(757) 466-0464
(757) 466-0834 (Fax)
tbrunick@clarkedolph.com
*Counsel for IMO Industries, Inc.*

Jeffery Poretz, Esq.
MILES & STOCKBRIDGE P.C.
1751 Pinnacle Drive
Suite 1500
Tyson's Corner, Virginia 22102
(703) 903-9000
(703) 610-8686 (Fax)
*Counsel for Air & Liquid Systems Corp.*

513464v.1

Albert Pooles, Esq.
POOLE, MAHONEY P.C.
4705 Columbus Street
Virginia Beach, Virginia 23462-6749
(757) 552-6044
apoole@poolemahoney.com
*Counsel for Noland Co.*

William W. Nexsan, Esq.
STACKHOUSE, NEXSAN & TURRIETTA, PLLC
4505 Colley Avenue
Norfolk, Virginia 23508
(757) 623-3555
(757) 624-9245 (Fax)
*Counsel for Union Carbon Corp.*

George J. Dancigers, Esq.
MCKENRY, DANCIGERS, DAWSON, P.C.
192 Ballard Court, Suite 400
Virginia Beach, VA 23462
(757) 461.2500
(757) 461.2341 (Fax)
*Counsel for Waco Inc.*

Robert O'Donnell, Esq.
VANDEVENTER BLACK L.L.P.
101 West Main Street
500 World Trade Center
Norfolk, Virginia 23510
(757) 446-8607
(757) 446-8670 (Fax)
rodonnell@vanblk.com
*Counsel for J. Henry Holland Corp.*

John P. Fishwick, Esq.
LICHTENSTEIN, FISHWICK PLC
401 E. Market Street, Suite 105
Charlottesville, VA 22902
(434) 220-3765
jpf@vatrials.com
*Counsel for Metropolitan Life Insurance Co.*

513464v.1

Kira Cook, Esq.
DEHAY, ELLISTON L.L.P.
36 South Charles Street
Suite 1300
Baltimore, Maryland 21201
(410) 783-7014
(410) 783-7221 (Fax)
kcook@dehay.com
*Counsel for Goulds Pumps, Inc.*

Randolph W. Robins, Jr. Esq.
SPOTTS, FAIN PC.
411 East Franklin Street
Suite 600
Richmond, Virginia 23219
(804) 697-2074
(804) 697-2174
rrobins@spottsfain.com
*Counsel for Trane U.S. Inc.*

.

I FURTHER CERTIFY that the Clerk of Court will cause a copy of the foregoing to be posted electronically through the ECF system and shall be available for viewing and downloading from the ECF system.

/s/ Peter M. Moore
Jason R. Waters (VSB No. 73887)
Peter M. Moore (VSB No. 82444)
8444 Westpark Drive – Suite 510
McLean, VA 22102-5102
(703) 245-9300 (telephone)
(703) 245-9301 (facsimile)
Jason.Waters@wilsonelser.com
Peter.Moore@wilsonelser.com
*Counsel for Defendant General Dynamics Corporation*