UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division




CHARLES B. BRINKMAN and
LOUISE K. BRINKMAN,
Plaintiffs,

v. Civil Action No. 4:14cv142

JOHN CRANE, INC., *et al.*,
Defendants.

**ORDER**

Before the Court is a Motion to Remand (ECF 72) filed by Plaintiffs. For the reasons that follow, this motion must be **GRANTED**.

**BACKGROUND**

Plaintiffs filed this action in the Circuit Court for the City of Newport News, alleging state law claims against several Defendants for asbestos exposure. With respect to Defendant General Dynamics and Electric Boat, Plaintiffs asserted "premises liability claims" against them, alleging negligence in a failure to warn invitees of dangers on the premises. The Complaint alleges that the premises consist of Defendants' privately owned and operated shipyard in Groton, Connecticut. Defendants General Dynamics and Electric Boat (collectively "Defendants") removed the action to this Court on October 17, 2014 pursuant to 28 U.S.C. § 1442(a)(1) which authorizes "federal officer removal." Plaintiffs filed the instant Motion to Remand, asserting that Defendants' removal is improper. Defendant General Dynamics filed a brief in Opposition to the Motion to Remand. Defendant Electric Boat did not.[1]

[1] The Complaint alleges that Electric Boat is a wholly-owned subsidiary and/or division of General Dynamics Corporation. Compl. at ¶ 14(u).

## APPLICABLE LEGAL PRINCIPLES

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), provides that an action brought in state court may be removed by any federal officers or their agents "for or relating to any act under color of such office." *See* 28 U.S.C. § 1442(a)(1) (2014). Removal is proper under this section if (1) the defendant acted under the direction of a federal officer, (2) the defendant has a colorable federal defense to the plaintiff's claim, and (3) there is a causal nexus between the plaintiff's claim and the acts performed by the defendant under the color of federal office. *See Mesa v. California*, 489 U.S. 121, 124-32 (1989). If a defendant fails on any one of these elements, removal is improper. *See id.*

"[I]n order to satisfy the 'acting under' prong, a federal officer must have 'direct and detailed control over the defendant' such that 'the acts that form the basis for the suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations.'" *L-3 Commc'ns Corp. v. Serco Inc.*, 39 F. Supp. 3d 740, 750 (E.D. Va. 2014) (citation omitted). "If the party establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal." *Id.* (internal quotation marks and citations omitted). The defendant need not prove that the federal immunity defense will succeed to obtain removal. *Jamison v. Wiley*, 14 F.3d 222, 228 (4th Cir. 1994). Further, "[t]he nexus element of federal officer removal can be established by showing that the 'claims arise as a consequence of the defendant carrying out the directives of a federal officer.'" *L-3 Commc'ns*, 39 F. Supp. 3d at 751.

The United States Court of Appeals for the Fourth Circuit has held that "the right of removal conferred by § 1442(a)(1) is to be broadly construed." *Kolibash v. Committee on Legal Ethics of West Virginia Bar*, 872 F.2d 571, 576 (4th Cir. 1989) (citation omitted). Therefore,

"[i]n cases where a federal officer is subject to state process for acts performed 'under color' of his federal office, the policy of protecting federal officers by guaranteeing them a federal forum should not be frustrated by a 'narrow grudging interpretation' of the statute." *Id.* (citation omitted).

Further, "[a] federal court's role under § 1442 is similar to that of a federal court sitting in diversity." *Id.* at 576. The federal officer removal statute "permits a state action to be adjudicated on the merits in a federal court 'free from local interests or prejudice[.]'" *Id.* at 577. Unlike removal under § 1441, removal under § 1442(a) does not require other defendants to "join in or consent for removal to be proper." *Citrano v. John Crane-Houdaille, Inc.*, 1 F. Supp. 3d 459, 465 (D. Md. 2014). The federal officer removal statute should be construed liberally, but the burden is on defendants seeking removal to establish each of the elements of federal officer jurisdiction. *CRGT, Inc. v. Northrop Grumman Sys. Corp.*, No. 1:12–cv–554, 2012 WL 3776369, at *1 (E.D. Va. Aug. 28, 2012).

To the extent the Court considers these legal determinations close calls, where there is any doubt, the Court should resolve the matter in favor of remand. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) (concluding that all doubts as to removal must be resolved in favor of the plaintiff and state court jurisdiction).

## ANALYSIS

This Court lacks subject matter jurisdiction because Defendants failed to raise a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124-32 (1989). While a defendant need not win its case in order to raise a "colorable federal defense," it "must allege facts that would support a colorable immunity defense if those facts were true." *See State v. Ivory*, 906 F.2d 999, 1002 (4th Cir. 1990). The burden is on General Dynamic and Electric Boat

to establish each of the elements of federal officer jurisdiction. *See, e.g.*, *CRGT, Inc. v. Northrop Grumman Sys. Corp.*, No. 1:12–cv–554, 2012 WL 3776369, at *1 (E.D. Va. Aug. 28, 2012). Electric Boat did not file an opposition to the Motion to Remand, and it did not join General Dynamic's opposition.

General Dynamic asserts that "[t]here is no precedent here[,]" and asks the Court to analogize to cases General Dynamic references to render support for its claims. General Dynamic argues the plausibility of three colorable federal defenses: (1) derivative sovereign immunity under *Yearsley*[2] & *Feres*;[3] (2) preemption under the "combatant activities exception" of the Federal Tort Claims Act, 28 U.S.C. § 2680(j); and (3) Government contractor immunity under *Boyle*.[4] After reviewing each of these alleged defenses, the Court concludes that the facts alleged would not support a colorable immunity defense under the circumstances presented.

1. Derivative Sovereign Immunity under *Yearsley* and *Feres*

General Dynamics' argument that derivative sovereign immunity is a colorable federal defense applicable to this case is without merit for three reasons: (a) its reliance on *Yearsley* is unavailing because General Dynamics (hereinafter "Defendant") has not alleged facts supporting the assertion that its failure to warn invitees on its premises of dangers on its premises was "authorized and directed by the Government of the United States"; (b) Defendant's reliance on *Feres* is misplaced because *Feres* grants immunity to the federal government, and Defendant is not the federal government; and (c) Defendant relied on the holdings and rationales from opinions that have been expressly overruled.

[2] *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940).
[3] *Feres v. United States*, 340 U.S. 135 (1950).
[4] *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).

(a) *Yearsley*

Defendant's reliance on *Yearsley* is unavailing. In *Yearsley*, the defendant contractors had built dikes in the Missouri River at the direction of the Secretary of War and under the supervision of the Chief of Engineers of the United States for the purpose of improving the navigation of the Missouri River. *Yearsley*, 309 U.S. at 19. This improvement was authorized by an Act of Congress. *Id.* The improvement project caused a part of the petitioners' lands to be washed away. *Id.* Petitioners sued. *Id.* The Supreme Court of the United States affirmed the Court of Appeals for the Eighth Circuit's holding that the contractors were entitled to immunity under these circumstances. *Id.* at 22-23. The Court concluded that "if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional powers of Congress, there is no liability on the part of the contractor for executing its will." *Id.* at 20-21.

The Fourth Circuit recently had occasion to examine *Yearsley* in its decision *In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326, 342-45 (4th Cir. 2014), *cert. denied sub nom. KBR, Inc. v. Metzgar*, 135 S. Ct. 1153 (2015). In *KBR*, the Fourth Circuit determined that "under *Yearsley*, a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power." *Id.* at 342. The Fourth Circuit also noted that the Supreme Court in *Yearsley* "based its holding on the fact that the government had 'impliedly promised to pay [just] compensation [for any taking] and ha[d] afforded a remedy for its recovery.'" *Id.* (alterations in orginal). The Fourth Circuit reasoned:

> *Yearsley*'s ultimate holding is therefore quite narrow: "So, in the case of a taking by the Government of private property for public use such as petitioners allege here, it cannot be doubted that the remedy to obtain compensation from the Government is as comprehensive as the requirement of the Constitution, and hence it excludes liability of the Government's representatives lawfully acting on its behalf in relation to the taking."

*Id.* at 342-43 (quoting *Yearsley*, 309 U.S. at 22).

However, "despite this narrow holding," the Fourth Circuit "has recognized, based on *Yearsley*, that contractors and common law agents acting within the scope of their employment for the United States have derivative sovereign immunity." *Id.* at 343 (internal quotation marks omitted) (quoting *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000)). Furthermore, "[b]y rendering government contractors immune from suit when they act within the scope of their validly conferred authority, the *Yearsley* rule combats the 'unwarranted timidity' that can arise if employees fear that their actions will result in lawsuits." *Id.* The "Supreme Court emphasized that '[t]he Court of Appeals . . . found it to be undisputed that the work which the contractor had done . . . *was all authorized and directed* by the Government of the United States." *Id.* at 345 (emphasis in original) (quoting *Yearsley*, 309 U.S. at 20).

The Fourth Circuit reasoned that "[t]his language suggests that the contractor must adhere to the government's instructions to enjoy derivative sovereign immunity; staying within the thematic umbrella of the work that the government authorized is not enough to render the contractor's activities 'the act[s] of the government.'" *Id.* (citing *Yearsley*, 309 U.S. at 22). Ultimately, the Fourth Circuit concluded that the defendant was entitled to derivative sovereign immunity "only if it adhered to the terms of its contract with the government." *Id.* at 345.

Defendant does not dispute that "Plaintiff has asserted premises liability claims against General Dynamic." Def. Opp. to Mot. to Remand at 2. Defendant alleges that *Yearsley* provides derivative sovereign immunity under these circumstances because Defendant assembled the submarine on its private premises under a contract with the Navy and under the direct supervision and control of the United States Navy. *Id.* at 9. While the assembly of the submarine occurred on private property owned by Defendant, the "Navy supervised and

inspected this work, and required [Defendant] to use specified products, materials and equipment." *See id.* at 7-8. Defendant argues that Navy personnel "are always present at the Electric Boat shipyard[,]" and that the Navy has "its own offices" at the shipyard. *Id.* at 8. Defendant further asserts that the Navy required Defendant to comply with detailed specifications for the assembly, maintenance, and modernization of Navy submarines, so "imposing liability on [Defendant] will undermine the U.S. Navy's mission to provide an effective naval force." *See id.* at 9-10.

Defendant's reliance on *Yearsley* is unavailing. As the Fourth Circuit has reiterated, what was critical to the *Yearsley* decision was that the work or conduct that led to the lawsuit "*was all authorized and directed* by the Government of the United States." *See KBR*, 744 F.3d at 345. Defendant is entitled to derivative sovereign immunity "only if it adhered to the terms of its contract with the government." *See id.*

The conduct in question in this case is quite narrow—Defendant's failure to warn about the dangers of asbestos on its private premises, and not Defendant's use of asbestos containing products, or Defendant's failure to put warning labels on the products it used. Defendant has not alleged facts supporting assertions that the military directed, ordered, or authorized Defendant not to warn invitees on its premises about the dangers of asbestos. *See KBR*, 774 F.3d at 345. The fact that Defendant was building a ship for the Navy on its private premises under the direction of the Navy supports the notion that Defendant was operating "within the thematic umbrella of the work that the government authorized," rather than an assertion that Defendant was precluded from warning visitors to its premises of the known dangers on its premises. *See id.* It is "not enough to render the contractor's activities 'the act[s] of the government.'" *See id.* Therefore, Defendant's reliance on *Yearsley* is unavailing. *See id.*; *see*

*also Butters*, 225 F.3d at 466 ("Sovereign immunity exists [where] it is in the public interest to protect the exercise of certain governmental functions. This public interest [exists] when the government delegates that function down the chain of command.").

(b) *Feres*

Similarly, Defendant's reliance on *Feres v. United States*, 340 U.S. 135 (1950) is misplaced.[5] In *Feres*, the Supreme Court of the United States addressed three claims brought against the United States under the Torts Claims Act. *Id.* at 136-37. The issue addressed in *Feres* was narrow: "the only issue of law raised is whether the Tort Claims Act extends its remedy to one sustaining 'incident to the service' what under other circumstances would be an actionable wrong." *Id.* at 138. The Supreme Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146. "The basic rule, which has come to be known as the *Feres* doctrine, is that service members are barred from recovering damages [from the Government] for injuries 'incident to service.'" *Appelhans v. United States*, 877 F.2d 309, 311 (4th Cir. 1989).

The Supreme Court applied *Feres* in the case of *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673 (1977). In *Stencel*, a National Guard officer was permanently injured when the ejection system on his fighter aircraft malfunctioned during a midair emergency. *Id.* at 666. The officer brought suit against the United States and the private manufacturer of the ejection system. *Id.* The manufacturer had manufactured the ejection system pursuant to Government specifications and with components furnished by the Government. *Id.* Therefore, the manufacturer brought a cross-claim against the Government for

[5] This opinion analyzed three separate cases consolidated into one opinion because of common issues arising under the Tort Claims Act. *See id.* at 136.

indemnification. *Id.* The Supreme Court held that because *Feres* protected the *Government* from suit under these circumstances, the manufacturers' *cross-claim* for indemnity must be dismissed. *Id.* at 673 (emphasis added).

Defendant relies on *Feres* and *Stencel*, arguing that the Court should extend the doctrines of *Feres* and *Stencel* to Defendant because the "acts of [Defendant] and of [P]laintiff [are] inseparable from the Navy's military judgments." Def. Br. Opp. at 14. This argument is unavailing. Both *Feres* and *Stencel* addressed suits directly against the United States Government, finding that the United States was immune from suit. *See generally Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673 (1977); *Feres v. United States*, 340 U.S. 135 (1950). *Feres* and *Stencel* are inapplicable to cases in which, as here, a private contractor is being sued for private actions that were not a result of authorization or direction of the Government.[6]

Defendant also relies on *In re KBR, Inc. Burn Pit Litg.*, 736 F. Supp. 2d 954, 960 (D. Md. 2010). Defendant overlooked that this case was expressly modified by the United States District Court of Maryland and later reversed by the Fourth Circuit in *In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326 (4th Cir. 2014). In sum, Defendant's reliance on *Feres* and *Stencel* is unavailing, and the authorities that Defendant provides to support its argument lack binding or persuasive force in any jurisdiction.

2. Combatant Activities Exception

Defendant also argues that it is entitled to immunity based on the "combatant activities" exception to the Federal Tort Claims Act. *See* Def. Br. Opp. at 18. "Pursuant to the combatant activities exception, the United States is immune from '[a]ny claim arising out of the combatant

[6] Similarly, Defendants' reliance on *United States v. Johnson*, 481 U.S. 681 (1987) is misplaced because, like *Feres* and *Stencel*, that case addressed a suit directly against the Government. *See id.* at 681.

activities of the military or naval forces, or the Coast Guard, during time of war.'" *In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326, 346 (4th Cir. 2014) (alteration in original) (citing 28 U.S.C. § 2680(j)). The "purpose of the combatant activities exception" is to "'foreclose state regulation of the military's battlefield conduct and decisions.'" *Id.* at 350 (citation omitted). The Fourth Circuit employs the *Saleh*[7] test, which "requires contractors to be 'integrated into combatant activities'" to enjoy immunity under this doctrine. *See id.* at 351.

"'Combat' connotes physical violence; 'combatant,' its derivative, as used here, connotes pertaining to actual hostilities[.]" *Id.* (adopting the Ninth Circuit's test from *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948)). "The phrase 'combatant activities' [is] of somewhat wider scope." *Id.* (alteration in original). "It therefore makes sense for combatant activities to extend beyond engagement in physical force." *Id.* However, this extension has limitations. *See id.* (noting that combatant activities include "activities both necessary to and in direct connection with actual hostilities," such as "supplying ammunition to fighting vessels in a combat area during war") (internal quotation marks and citation omitted). In other words, "[a]iding others to swing the sword of battle is certainly a 'combatant activity,' but the act of returning [the sword] to a place of safekeeping after all of the fighting is over cannot logically be cataloged as a 'combatant activity.'" *Johnson*, 170 F.2d at 770.

In the case *sub judice*, Defendant argues that it was engaged in combatant activities because the construction of the submarine occurred during the Vietnam War. Def. Br. Opp. at 19. This argument is unavailing. Although the Vietnam War was underway at the time, Defendant was thousands of miles away in Groton, Connecticut on its private property. Building the submarine under these circumstances is not akin to "aiding others to swing the sword of

---

[7] Referring to *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009).

battle," and is not akin to "returning [the sword] to safekeeping after all the fighting is over." *See Johnson*, 170 F.2d at 770. Defendant's actions of building what would later become a submarine in Groton, Connecticut cannot "logically be cataloged as" a combatant activity.[8] *See id.*

Defendant also relied upon *Harris v. Kellogg, Brown & Root Servs.*, 878 F. Supp. 2d 543 (W.D. Pa. 2012) to support its argument on this point. Defendant's reliance on this case is unavailing because it was expressly reversed and remanded by the United States Court of Appeals for the Third Circuit in *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458 (3d

---

[8] Additionally, Defendants' Notice of Removal contains a number of misconstrued cases. In Defendants' Notice of Removal, Defendants asserted that General Dynamics "has been held to be a government contractor entitled to this defense[,]" citing *Boston v. Eastern Refractories Co., Inc., et al.*, 2:07-CV-63993-ER (E.D. Pa. MDL 875). Def. Notice of Removal at ¶ 34 (ECF 1). However, per Defendant's own words in that case, the plaintiff there suffered injury in a shipyard owned and operated by the Navy, not a private shipyard owned by Defendant. Brief for General Dynamics d/b/a Electric Boat Motion for Summary Judgment at 2, *Boston*, 2:07cv-63993-ER (E.D. Pa. MDL 875) (ECF 61) ("Plaintiffs allege that Gail Boston sustained personal injuries from exposure to asbestos dust during his employment as a civilian General Helper at the Portsmouth Navy Yard, a shipyard and federal enclave operated by the United States Navy[.]").

Defendant also asserted that "General Dynamics has successfully removed cases to district courts all over the country . . . based on the assertion of its government contractor defenses in connection with its former Groton, CT shipyard activities[,]" citing the following cases: *Coats v. Duncan Enterprises, et al.*, EDPA (MDL) 2:12-cv-60186; *Prentice v. Air & Liquid Systems, et al.*, EDPA (MDL), 2:12-cv-60159; *Cummiskey v. General Electric Company, et al.*, EDPA (MDL) 2:12-cv-60131; *Roache v. Electric Boat Corporation*, EDPA (MDL) 2:10-cv-78922; *Kelly v. General Electric Company, et al.*, EDPA (MDL) 2:12-cv-60021; *Goodall v. Electric Boat Corporation*, USDC CT 3:13cv-0366; *Dryfka v. Trane US Inc. et al.*, SDIL 3:13-cv-01019. Def. Notice of Removal at ¶ 35.

The Court examined the record for each of these cases, and Defendant's reliance on these cases is misleading. First, in none of those cases did the Court rule on a Motion to Remand. Second, in each of those cases the case was remanded to state court, and/or the defendant consented to the remand, and/or the defendant resolved the case with the plaintiff outside of the court system. *See* Order of Remand, Oct. 31, 2012, *Coats*, EDPA (MDL) 2:12-cv-60186 (ECF 31) (remanding case to state court with consent of Defendant Electric Boat); Order of Dismissal, May 30, 2012 & Order Granting Summary Judgment, June 3, 2013, *Prentice*, EDPA (MDL), 2:12-cv-60159 (ECF 51 & ECF 53) (dismissing case against General Dynamics Corporation after plaintiffs reported that all issues had been resolved; Electric Boat's motion for summary judgment was granted where Electric Boat noted that the claims against it sounded exclusively in products liability); *Cummiskey*, EDPA (MDL) 2:12-cv-60131 (Electric Boat granted unopposed summary judgment where response was untimely) (ECF 35); *Roache*, EDPA (MDL) 2:10-cv-78922 (case dismissed after issues reportedly settled) (ECF 21); *Kelly*, EDPA (MDL) 2:12-cv-60021 (case dismissed after plaintiffs moved for voluntary dismissal) (ECF 29); *Goodall*, USDC CT 3:13cv-0366 (case dismissed after plaintiffs stipulated to voluntary dismissal) (ECF 32); *Dryfka*, SDIL 3:13-cv-01019 (case remanded to state court after General Dynamics filed a stipulation of consent to remand).

Cir. 2013) *cert. denied*, 135 S. Ct. 1152 (2015). For the foregoing reasons, Defendant has not alleged facts sufficient to support a colorable federal defense under the "combatant activities exception" to the Federal Tort Claims Act.

3. Government contractor immunity under *Boyle*

Defendant also asserts that it is entitled to Government contractor immunity under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). The Fourth Circuit recently considered *Boyle* in its decision *In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326, 346-51 (4th Cir. 2014). "*Boyle* arose when a Marine helicopter co-pilot died after his helicopter crashed into the ocean during a training exercise." *Id.* at 346. "Although the co-pilot survived the crash, he could not open the helicopter's escape hatch, causing him to drown." *Id.* "The co-pilot's father sought to hold the military contractor that built the helicopter liable under state tort law, contending that it defectively repaired part of the helicopter's flight control system and defectively designed the escape hatch." *Id.* The Supreme Court held that state law holding government contractors liable for design defects in military equipment may present significant conflict with federal policy, such that state law is preempted by federal law. *Boyle*, 487 U.S. at 507. Preemption will "occur only where . . . 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law," or "the application of state law would 'frustrate specific objectives' of federal legislation[.]" *Id.* at 507. "[C]onflict there must be." *Id.* at 508.

Under *Boyle*, in order to succeed with the military contractor defense, a defendant must show that:

> 1) the United States approved reasonably precise specifications;
> 2) the equipment conformed to those specifications; and
> 3) the supplier warned the United States about any dangers in the use of the equipment that were not known to the United States.

*McCormick v. C.E. Thurston & Sons, Inc.*, 977 F. Supp. 400, 403 (E.D. Va. 1997) (citing *Boyle*, 487 U.S. at 512).

Because the *Boyle* test deals uniquely with products liability, this Court has repeatedly held that *Boyle* is inapplicable to failure to warn cases. *See, e.g.*, *McCormick*, 977 F. Supp. at 403 (noting that "in the thousands of asbestos cases that have preceded, the United States District Court for the Eastern District of Virginia has determined that the government contractor defense is not available in 'failure to warn' cases."). As Defendant concedes, "Plaintiff has asserted premises liability claims against General Dynamics." Def. Br. Opp. at 2. These premises liability claims assert negligence for a failure to warn of dangers on the premises. *See* Compl. at ¶ 21. Therefore, the *Boyle* test is inapplicable to this case. *See, e.g.*, *McCormick*, 977 F. Supp. at 403.

## CONCLUSION

For the foregoing reasons, Defendant General Dynamics has not alleged facts that assert a "colorable federal defense" to the state law claims brought against it. Therefore, the case must be **REMANDED**. *See, e.g.*, *Mesa v. California*, 489 U.S. 121, 124-32 (1989). Therefore, Plaintiffs' Motion to Remand this case to the Circuit Court for the City of Newport News (ECF 72) is **GRANTED**. However, because Plaintiffs have argued before this Court that they are seeking relief against the shipyard only on the theory of failure to warn, Plaintiffs should be precluded on remand from seeking relief against the shipyard on any theory other than failure to warn and the associated claim of negligence under premises liability. *See Epperson v. Northrop Grumman Sys. Corp.*, No. 4:05CV2953, 2006 WL 90070, at *6 (E.D. Va. Jan. 11, 2006) (noting that plaintiff should be precluded from taking a difference stance in state court after asserting in federal court that it was only advancing failure to warn claims).

The Clerk is **REQUESTED** to mail a certified copy of this Order to the Clerk of the Circuit Court for the City of Newport News, Virginia, as well as copies to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge

6/11, 2015
Newport News, Virginia